Lessee of JOHN MONTGOMERY *against* JAMES SNODGRASS.

Depositions taken between the same parties on a *caveat* before the Board of Property, not allowed in evidence; tho' the witnesses were cross examined and are since dead.

EJECTMENT for one messuage and 100 acres of land in Mifflin township.

The plaintiff lay considerable stress on the decision of the Board of Property, on a filed *caveat* by Alexander Snodgrass, the son of the defendant, who was interested in the lands in controversy,) against James Bell, under whom the plaintiff

claimed. The decree of the board, which bore date on the 2d May 1786, recited, that it appeared there was a vacancy of upwards of 500 acres adjoining Bell's survey, sufficient for two plantations, on which Snodgrass might lay his two warrants, and directs that Bell's survey be accepted.

The warrants in the names of James Snodgrass and Alexander Snodgrass, bore date three days earlier than the plaintiff's. And it appeared by a return of the surveyors of the district, that the Board of Property lay under a mistake, and there were but about 20 acres vacant.

The plaintiff offered in evidence, the deposition of Samuel Cunningham, taken on the above *caveat* on the 12th April 1786. The witness had been cross-examined, and had died in the fall of 1789.

Mr. Woods for the defendant, excepted to the deposition. The Board of Property does not form a court, known to the law as such.

Mr. Ross for the plaintiff, admitted that he could find no case analogous to the present, in the books. But the proceedings of that board are records. It was instituted after the revolution, by the acts of the 9th April 1781, (1 Dall. Laws, 891,) and of the 5th April 1782, (2 Dall. Laws, 21.) Under this latter law it possesses very large and extensive powers, of hearing and determining in all cases of controversy on *caveats*, &c. and now forms a part of the jurisprudence of Pennsylvania. The Board of Property is cousin-german of this court and nearly allied thereto, though we may sometimes affect to treat our poor relations with contempt. Its decisions are respectable and on them depend many titles. What is the present suit, but an appeal from the judgment of that board? And how can we know the ground on which they have proceeded, unless we have the testimony before us, on which they formed their conclusions? Suppose a deposition taken before a justice of peace, in a case of debt, in the presence of the parties, and an appeal is afterwards brought, shall not the deposition be read in the Common Pleas after the witness's death? The same question may be put, as to depositions taken by referees sitting under a rule of court.

By the court. Sitting here, we disclaim all affinity whatever to that board? they are no court in any sense of the word; they are not vested with the powers essentially necessary to such a tribunal; they can neither administer an oath, enforce the attendance of witnesses

nor punish contempts ; the evidence which they receive is not within the reasons given in the books, why testimony given in one court shall be received in another, between parties or privies in interest ; they often proceed on ex parte affidavits, and it will not be pretended that those could be received in a court of common law. What line can be drawn in such cases ? Besides, the reason of admitting such testimony, founded on necessity, fails in the present instance. There is now an adequate power lodged in the Supreme Court and in the Court of Common Pleas, to perpetuate testimony ; and we know of no other jurisdiction which possesses the same authority. We conceive this to be a mere experiment, and no instance can be shown of such depositions being allowed in evidence. So far from sitting as a Court of Appeal, from the decision of the Board of Property, it is expressly directed by the 3d section of the act of 5th April 1782, that the courts of common law shall remain open to the parties, in as full and ample a manner as if no determination had ever been given.* The depositions were overruled.

Verdict for the defendant.

## AT NISI PRIUS AT WASHINGTON, MAY ASSIZES, 1797.

### CORAM, YEATES AND SMITH, JUSTICES.

---

* Lessee of James Staret v. James Chambers and William Chambers, at Nisi Prius at Carlisle, June assizes 1774. Coram, Chew, chief justices, and Morton, justice.

The defendant's counsel moved to give in evidence a deposition, sworn to before referees appointed by rule of court between the same parties, in a former suit brought for the lands in question, the witness having died since the reference, but the court, after full argument, rejected the deposition.